**STATE of Maine**

v.

**Michael LAPLANTE.**

Supreme Judicial Court of Maine.

Argued Sept. 16, 1987.
Decided Dec. 4, 1987.

Janet T. Mills, Dist. Atty., Craig E. Turner (orally), Asst. Dist. Atty., William D. Maselli, Law Intern, Auburn, for plaintiff.

Anthony K. Ferguson (orally), Fales & Fales, Lewiston, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, GLASSMAN, SCOLNIK and CLIFFORD, JJ.

CLIFFORD, Justice.

The defendant, Michael Laplante, appeals a judgment entered by the Superior Court, Androscoggin County, on a jury verdict finding him guilty of armed robbery, 17–A M.R.S.A. § 651(1)(E) (1983),[1] following a trial in February, 1987.

In his appeal, Laplante contends that 1) the motion justice erred in denying his motion to suppress, 2) the evidence was insufficient to support the verdict and 3) the trial justice erred in refusing to instruct the jury on the offense of receiving stolen property. We affirm the judgment.

The facts of the case are as follows. On November 11, 1986, at approximately 6:30 p.m., two men robbed the Runway Variety Store in Auburn at gunpoint. Witnesses in the store at the time described one of the men as being about 5′8″ tall, wearing a ski mask, light gray wool sweater, faded blue jeans, and carrying a silver handgun. The other man had a husky build, was wearing a stocking mask, burgundy or maroon colored leather jacket and was carrying a black handgun with a long barrel. Despite his stocking mask, he was seen to have a mustache, black hair, and a beard. Witnesses in the store heard a car with a loud exhaust leave the store's parking lot after the two perpetrators fled. Another witness, Jeffrey Therriault, was outside the store at this time and described a rust-colored 1969 or 1970 Pontiac LeMans coming out of the parking lot. The car had a jacked-up rear, a loud exhaust, and Therriault thought he saw four occupants in the car. When Therriault entered the store, he was told that a robbery had just taken place.

Approximately $800 in cash and checks were taken. The exact amount in cash as opposed to checks was never ascertained. There was testimony that among the cash taken was at least one, and possibly two bundles of twenty-five one dollar bills, held together with paper bands such as those used by banks. The bills in these bundles were arranged so that they were all face up and in the same direction.

Later that evening, at approximately 7:50 p.m., Trooper Thomas Arnold of the Maine State Police was driving southbound in his marked cruiser on the Maine Turnpike when he observed a car pulled over in the breakdown lane near Saco with its lights on. Arnold stopped to investigate. The car was an aqua-blue, two-door Chevrolet Chevelle convertible with a jacked-up rear. The car's engine was running and Arnold noticed it had a loud exhaust. He asked the driver what was wrong and received no response. Arnold then observed open cans of beer and a twelve pack of Budweiser in the car. He ordered the occupants to give him the open cans of beer and to produce identification. Arnold planned to give the occupants a warning for drinking in public, pursuant to 17 M.R.S.A. § 2003–A (Supp. 1987).[2]

---

1. 17–A M.R.S.A. § 651(1)(E) provides as follows:
   **§ 651. Robbery**
   1. A person is guilty of robbery if he commits or attempts to commit theft and at the time of his actions: ...
   E. He or an accomplice to his knowledge is armed with a dangerous weapon in the course of a robbery as defined in paragraphs A through D.

2. The statute reads, in pertinent part:

   D. "Public place" means:
   (1) A place owned or operated by a governmental entity to which the public at large or a substantial group has access, including but not limited to:
   (a) Public ways as defined in Title 17–A, section 505; ....
   **2. Crime.** A person is guilty of public drinking if:
   A. After being forbidden to do so personally by a law enforcement officer, he drinks liquor

The driver, Ricky Nault, produced a State of Maine I.D. card and stated that he had a California license, but it was under suspension. The right front passenger, Leo Giguere, presented an employee I.D. The left rear passenger, Ricky Gaudette, produced a social security card and the right rear passenger, Michael Laplante, produced a State of Maine I.D.

Arnold had Nault step out of the car. Nault did not have a registration for the car and stated that the vehicle's plates belonged to his friend, Jeff. Arnold had Nault sit with him in Arnold's cruiser while Arnold ran a radio check on the car registration, to determine if there were warrants outstanding for any of the occupants or whether any of them had a valid driver's license. The license plates on the vehicle turned out to belong to a Jeffrey Higgins and were supposed to be on a gray 1967 Thunderbird. The radio check also revealed that none of the occupants had a valid license. Arnold placed Nault under arrest for illegal attachment of license plates.

Arnold then used his radio to request assistance from Trooper Richard LeClair and Sergeant Mark Millet, who were in a patrol car a short distance away. They arrived on the scene several minutes after Arnold's request for help. Because no one was licensed to drive the car and because it had illegally attached license plates, the troopers decided to impound it and called a tow truck to move it.

The remaining occupants were ordered out of the car and LeClair and Millet began a search of the car's contents. A silver handgun, a black Crossman air pistol, a ski mask and a pair of gloves were found under the seats. LeClair discovered that the silver handgun was loaded and took several bullets from the gun's clip. Millet then mentioned to Arnold that there had been a general broadcast earlier describing the

robbery in Auburn. Arnold radioed to the Scarborough State Police barracks asking for a description of the robbery and suspects. The description, which was essentially the same as that outlined above, was read to Arnold over the radio. All four of the car's occupants were arrested for armed robbery and had their *Miranda* rights read to them. All four exercised their right to remain silent. They were transported to the Scarborough barracks.

Upon arriving at Scarborough, the four were subjected to a custodial search. Giguere had a maroon corduroy jacket on and was carrying $28.49 on his person. Gaudette was wearing a maroon or burgundy colored leather jacket and was carrying $200. The $200 consisted of two 20's, eleven 10's, and ten 5's. The money was evenly divided up into four groups of $50 each. Laplante was wearing a brown leather jacket with a Harley–Davidson patch on the back, a maroon shirt and black t-shirt, and was carrying two piles of $25 in one dollar bills; one pile was held by a paper band. All the bills were face up and in the same direction. Nault was wearing a gray sweater and blue jeans. Two groups of $25 in one dollar bills were found in his possession. These bills were also all face up and in the same direction.

A hearing was held before the Superior Court on a motion to suppress evidence taken from the car and the defendants. The motion was denied.

The four defendants were tried jointly. At trial, the cashier in the store at the time of the robbery, Heather Foster, and the owner of the store, Donald Bouchard, both identified the leather jacket worn by Gaudette as the jacket worn by the man with the stocking mask. Foster stated that the sweater worn by Nault was not the sweater worn by the man with the ski mask. Foster and Bouchard also said that the ski mask taken from the car resembled the ski mask worn by one of the robbers. The guns recovered from the car driven by

in any public place knowing that he is not licensed or privileged to do so, unless he has been given permission to do so by the owner or authorized person; ....

....

**4. Violation.** Violation of this section is a Class E crime.

Nault were identified by Foster and Bouchard as being similar to those used by the robbers. Another witness, Wade Foster (Heather's younger brother), identified the silver handgun taken from the car as being similar to the gun used by the man wearing the ski mask. Heather Foster identified the paper band tying one of the groups of twenty-five one dollar bills found on Laplante as being identical to the type she used at the store. Therriault testified that he had observed the shapes of four people in the car with the jacked-up rear and loud exhaust that he saw leaving the store's parking lot. Other testimony showed that it would have taken approximately 40 minutes to drive from Auburn to the point where the car was found near Saco.

At the close of the State's case, all four defendants made oral motions for judgments of acquittal. The trial justice granted Giguere's motion for acquittal based on *State v. Carter*, 391 A.2d 344 (Me.1978). The other defendants' motions were denied. None of the remaining defendants chose to testify. The only witness called by any of the defendants was a private investigator, Lawrence Veilleux, who was called by Laplante. Veilleux testified that he had interviewed Therriault about two months after the robbery and that Therriault stated he could not say with certainty how many people he had seen in the car that left the store.

The jury found the three defendants guilty of robbery. Laplante subsequently filed a motion for judgment of acquittal or, in the alternative, a new trial, which was denied. He then filed this appeal.

## I.

Laplante challenges the validity of the license and registration radio check that was done by Trooper Arnold and the subsequent arrest of Nault. Laplante argues that Arnold did not have specific and articulable facts that supported his actions under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and *State v. Garland*, 482 A.2d 139 (Me.1984).

▮▮▮ An investigatory stop of a car or its occupants cannot be conducted unless the officer involved is "able to point to specific and articulable facts which, taken together with rational inferences from these facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968) (footnote omitted); *see also Delaware v. Prouse*, 440 U.S. 648, 663, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660 (1979); *Garland*, 482 A.2d at 142. A mere "hunch" will not justify an investigatory stop, *State v. Chapman*, 495 A.2d 314, 317 (Me.1985), and the inferences that cause an investigating officer to pursue an inquiry must be reasonable ones. *Garland*, 482 A.2d at 142.

▮▮▮ The investigation conducted by Arnold was justified under the *Terry* standard. A lone car pulled over to the side of a major highway at night suggests a driver in some sort of trouble, which reasonably warranted the inquiry made by Arnold. Moreover, an inquiry such as this is not the sort of "stop and frisk" that must meet the requirements of *Terry*:

> [L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, [or] asking him if he is willing to answer some questions ... If there is no detention—no seizure within the meaning of the Fourth Amendment—then no constitutional rights have been infringed.

*Florida v. Royer*, 460 U.S. 491, 497–98, 103 S.Ct. 1319, 1323–24, 75 L.Ed.2d 229 (1983); *see also United States v. Merritt*, 736 F.2d 223, 230 (5th Cir.1984); *State v. Sims*, 426 So.2d 148, 152 (La.1983).

▮▮▮ Once Arnold observed the open cans of beer in the car, he requested identification from everyone in order to give a personal warning pursuant to the requirements of 17 M.R.S.A. § 2003–A. Nault then admitted he did not have a valid driver's license and that the license plates on the car were not his, indicating that a violation of state law had taken place.[3] Under

---

3. Driving without a valid driver's license, 29     M.R.S.A. § 530 (Supp.1987) and using improper

this totality of circumstances, Arnold was justified in running a license, registration and warrant check on all of the occupants. Arnold had, at a minimum, a "rational foundational basis for ... [a] reasonable suspicion that the subject[s] [were] involved in unlawful conduct." *State v. Griffin*, 459 A.2d 1086, 1090 (Me.1983).

Laplante also objects to the arrest of Nault, which preceded the impoundment and search of the vehicle. Laplante argues that since only he and Giguere actually were in possession of open beer cans, Arnold should not have run a radio check on anyone but Laplante and Giguere. Assuming that Laplante has standing to object to Nault's arrest, this argument is without merit. Although Arnold did not directly observe Nault drinking, Nault's presence in an automobile containing a twelve pack of beer and open cans was enough to allow Arnold to warn Nault and his companions pursuant to 17 M.R.S.A. § 2003–A. After he stepped out of the car, and prior to Arnold's radio check, Nault admitted to Arnold that he " 'only had one beer.' " Nault also admitted to Arnold that the license plates on the car were not his, which at least raised the possibility that they were illegally attached. Considering these circumstances and Nault's admissions, Arnold was justified in running a radio check on Nault, which led to his arrest for illegal attachment of plates.

█ Laplante next challenges the validity of the search of the vehicle.[4] The Supreme Court and this court have held that an officer can search the passenger compartment of a vehicle when an occupant has been lawfully arrested, even if the occupant is outside of the car at the time of the arrest. *New York v. Belton*, 453 U.S.

454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981); *State v. Lamare*, 463 A.2d 279, 280 (Me.1983). For reasons already discussed Nault's arrest was lawful, and we find the subsequent search of the car valid under *Belton* and *Lamare*.

## II.

█ Laplante next argues that there was no probable cause to arrest and search him, relying on *State v. Anderson*, 447 A.2d 827 (Me.1982) and *State v. Fogg*, 410 A.2d 548 (Me.1980). Probable cause to arrest exists if "facts and circumstances within the knowledge of the officer and of which he had reasonably trustworthy information would warrant a prudent and cautious person to believe that the arrestee had committed the crime." *Anderson*, 447 A.2d at 829, citing *Fogg*, 410 A.2d at 550.

Here, the description of the robbery suspects and their car Arnold received over his radio was very close to that of the occupants of the car and the car itself. These similarities warranted the reasonable belief of Arnold that Laplante and his companions had committed the crime for which they were arrested.

## III.

█ Laplante also contends there was insufficient evidence with which to convict him. The standard applied when reviewing the sufficiency of evidence in a criminal case is "whether, based on [the] evidence viewed in the light most favorable to the prosecution, any trier of fact could rationally find beyond a reasonable doubt every element of the offense charged." *State v. Barry*, 495 A.2d 825, 826 (Me.1985); *see*

license plates, 29 M.R.S.A. § 2183 (Supp.1987) are Class E crimes.

**4.** The motion justice found that the impoundment and search of the car were carried out pursuant to a policy of the Maine State Police. The only testimony as to the impoundment policy came from Trooper Arnold, who testified that "policy 64" of the Maine State Police was followed, without explaining the nature or content of the policy. A search of an automobile without a warrant, if conducted in accordance with established inventory procedures, can be

reasonable. *South Dakota v. Opperman*, 428 U.S. 364, 372–73, 96 S.Ct. 3092, 3098–99, 49 L.Ed.2d 1000 (1976); *State v. Hudson*, 390 A.2d 509, 511 (Me.1978). There must be more than an "unelaborated assertion" that a search was conducted in accordance with an established inventory policy. *State v. Blais*, 416 A.2d 1253, 1258 (Me.1980). Since the search of the vehicle here was reasonable as incident to an arrest, we need not review the motion justice's finding that the evidence was sufficient to justify the search under an inventory policy.

*also State v. West,* 504 A.2d 622, 625 (Me. 1986); *State v. Anair,* 499 A.2d 152, 154 (Me.1985).

Laplante's challenge to the sufficiency of the evidence used to convict him is based largely on *State v. Carter,* 391 A.2d 344 (Me.1978). In *Carter,* two defendants, Carter and Shiplett, were convicted by a jury of armed robbery under 17–A M.R.S.A. § 651(1) and aggravated assault under 17–A M.R.S.A. § 208. The robbery occurred at a market in Portland. A white male with a stocking mask wearing glasses robbed the store with a handgun and was seen escaping in a blue car with another white male passenger. About an hour after the robbery a police officer observed Carter driving a blue car with Shiplett in the passenger's seat. Carter was wearing glasses. Carter and Shiplett saw the officer, and the officer observed Shiplett bend over as if to stuff something under his seat. The two defendants were arrested. A search of their car revealed a handgun under the passenger's seat and two stockings. Sixty dollars in bills and a cigarette package containing a roll of ten one dollar bills were found on the person of Shiplett. Carter's wallet containing fifty dollars was found in the car.

At trial, the only description given of the robber was that he was 5'3"–5'9", wearing a beige or brown jacket, with a stocking over his head and wearing glasses. The only description of the passenger in the car was given by a woman who said his hair was dark and about the same length as hers. We concluded that there was sufficient evidence for the jury to find that the descriptions of the witnesses matched that of Carter, but that, with respect to Shiplett, there was insufficient evidence to sustain his conviction.[5]

Our holding in *Carter* does not compel Laplante's acquittal. The evidence in this case more closely connects Laplante to the robbery than was the case of Shiplett in *Carter,* especially as it relates to proceeds from the robbery. Laplante was in possession of two groups of twenty-five one dollar bills, all arranged face up and in the same direction as the dollar bills kept at the store. One of the groups of bills was secured with the same type of paper band used at the store. Under all the circumstances existent, the jury could reasonably infer that the bills found on Laplante had been taken from the Runway Variety Store in the robbery of that same night. The Maine Criminal Code has codified the long established rule that proof of exclusive possession of property recently taken in a theft, robbery or burglary permits the factfinder to draw an inference that the exclusive possessor of that property committed the theft, robbery or burglary. 17–A M.R.S.A. § 361(2) (1983).[6] *State v. Durgan,* 467 A.2d 165, 167 (Me.1983); *State v. Langley,* 242 A.2d 688, 689 (Me.1968). The court correctly instructed the jury under section 361(2), and the resulting finding by the jury that Laplante was guilty of robbery was justified under the evidence. *See State v. Raymond,* 399 A.2d 223, 223–24 (Me.1979).

## IV.

Laplante lastly contends that the court should have instructed the jury on the elements of 17–A M.R.S.A. § 359 (1983), re-

**5.** Specifically, it was found that:
There was virtually no testimony concerning the appearance of the accomplice. The only evidence linking appellant Shiplett to the crime was his presence forty-five minutes after the robbery as a passenger in a car which the robbery suspect was driving and which contained instrumentalities of the crime. He was seen to bend over as if putting something under the car seat where the gun was found. He and appellant Carter were parked across the street from another variety store when first seen by Officer Walton, and unidentified money was found on his person. That evidence, even with all reasonable inferences to be drawn therefrom, is not sufficient to support a finding beyond a reasonable doubt that he was the accomplice in the robbery. *Carter,* 391 A.2d at 347.

**6.** 17–A M.R.S.A. § 361(2) provides in pertinent part:
Proof that the defendant was in exclusive possession of property that had recently been taken under circumstances constituting a [theft] or [robbery] shall give rise to a presumption that the defendant is guilty of the theft or robbery of the property, as the case may be....

ceiving stolen property. Laplante does not claim that the crime of receiving stolen property is a lesser included offense of robbery,[7] but argues that he was entitled to an instruction under the rule of *State v. Rand*, 430 A.2d 808 (Me.1981). In *Rand*, the defendant, in whose automobile some of the property taken in a recent burglary and theft was found, was charged with and convicted of burglary, 17–A M.R.S.A. § 401(1), and theft by unauthorized taking, 17–A M.R.S.A. § 353. The jury was instructed under the exclusive possession of recently stolen goods provision of 17–A M.R.S.A. § 361(2).[8]

Under the consolidation provisions of 17–A M.R.S.A. § 351,[9] Rand had been charged not only with theft by unauthorized taking, section 353, but also with any other theft offense under chapter 15 of the Criminal Code that the evidence supported, including receiving stolen property (section 359). *State v. Liberty*, 478 A.2d 1112, 1115 n. 4 (Me.1984); *State v. Brasslett*, 451 A.2d 890, 894 (Me.1982). Since Rand had in effect been charged with receiving stolen property, and since the evidence would have supported a finding of his guilt of that crime, we held that he was entitled to have the jury instructed on receiving stolen property. *Rand*, 430 A.2d at 814–17. We further held that 17–A M.R.S.A. § 13–A(3) (1983),[10] which requires the consent of the State as well as the defendant prior to the jury being instructed on an offense "alternative" to that charged, did not apply to Rand, since receiving stolen property was included in the charge of theft and therefore was not an alternative charge within the meaning of section 13–A(3). *Rand*, 430 A.2d at 817.

■ Laplante was charged only with robbery, section 651, under chapter 27, not a chapter 15 theft crime within the meaning of section 351,[11] the consolidation sec-

---

7. In order for a crime to be a lesser included offense, the lesser offense must be such that it is impossible to commit the greater without having committed the lesser. *State v. Bridges*, 413 A.2d 937, 944 (Me.1980); 17–A M.R.S.A. § 13–A(2) (1983). Under section 651(1), robbery may be committed while only *attempting* theft. It is therefore possible to commit the greater offense (robbery) without committing the lesser (theft).

8. *See supra* Section III.

9. 17–A M.R.S.A. § 351 (1983) provides as follows:

Conduct denominated theft in this chapter [15] constitutes a single crime embracing the separate crimes such as those heretofore known as larceny, larceny by trick, larceny by bailee, embezzlement, false pretenses, extortion, blackmail, shoplifting and receiving stolen property. An accusation of theft may be proved by evidence that it was committed in any manner that would be theft under this chapter, notwithstanding the specification of a different manner in the information or indictment, subject only to the power of the court to ensure a fair trial by granting a continuance or other appropriate relief if the conduct of the defense would be prejudiced by lack of fair notice or by surprise. If the evidence is sufficient to permit a finding of guilt of theft in more than one manner, no election among those manners is required.

10. 17–A M.R.S.A. § 13–A(3) provides as follows:
The court in its discretion may instruct the jury to consider, or may as factfinder consid-

er, any other offense or another alternative of the offense charged, although that other offense or alternative is not a lesser included offense, if:
A. On the basis of the evidence, there is a rational basis for finding the defendant guilty of the other offense;
B. The other offense does not carry a greater penalty than the offense charged;
C. Both the State and the defendant consent to the consideration of the other offenses by the factfinder; and
D. The defendant waives any applicable right to an indictment for the other offense.
When the other offense is defined in such a manner that it may be committed in alternative ways, the court may instruct the jury to consider, or may as factfinder consider, any alternative which meets the requirements of this subsection.

11. Historically, receiving stolen property was a crime separate and distinct from, and not merely accessorial to, another theft crime. *Rand*, 430 A.2d at 814; *Nissenbaum v. State*, 135 Me. 393, 395, 197 A. 915 (1938). The person who committed the crime of theft or robbery could not be convicted of being a receiver of the fruits of the theft or robbery, since the receiving had to occur subsequent to the theft. *Rand*, 430 A.2d at 814; *State v. Dall*, 305 A.2d 270, 270 n. 1 (Me.1973).
Section 351 of the Maine Criminal Code changed that concept as to most theft crimes, and consolidated those theft crimes formerly known as larceny, larceny by trick, larceny by bailee, embezzlement, false pretense, extortion,

tion, and therefore, unlike Rand, was not in effect also charged with receiving stolen property. Laplante was thus not entitled as a matter of right to have the jury instructed on a crime with which he had not been charged. *See Bessey v. State*, 297 A.2d 373, 376 (Me.1972).

Rather, an instruction on receiving stolen property could have been given only under the provisions of 17–A M.R.S.A. § 13–A(3). The language of that section allows the trial court, in its discretion, to instruct on offenses not charged if justified by the evidence and both the State and the defendant consent. The State did not consent here, and the court correctly refused to instruct on receiving stolen property.[12]

The entry is:

Judgment affirmed.

All concurring.

blackmail, shoplifting and receiving stolen property, set out in chapter 15 of the Code, sections 353–360, into a single crime of theft. A specific allegation of theft under any of those sections will support evidentiary proof of theft under any other of those chapter 15 sections. *State v. Brasslett*, 451 A.2d 890, 894 (Me.1982). Robbery, 17–A M.R.S.A. § 651, although a theft crime, remains outside of chapter 15 and not subject to the consolidation provisions of section 351. The common law concept that receiving stolen property is separate and distinct from and not accessorial to robbery remains unchanged. *Brasslett*, 451 A.2d at 894; *Rand*, 430 A.2d at 815; *Nissenbaum*, 135 Me. at 395, 197 A. 915.

12. The court determined that the evidence would not support a finding of the defendant's guilt of receiving stolen property. Because the defendant was not entitled to the instruction in any event, we need not review that determination.