Appellant-defendant was convicted of buying, receiving, concealing or aiding in concealing personal property, knowing that it had been stolen and not having the intent to restore it to the owner. He was sentenced to imprisonment for five years. The property alleged to have been stolen was described in the indictment as "One hundred forty-six Goodyear whitewall tires, G78-14, of the value of $30.00 each and of the total value of $4,380.00, the personal property of Goodyear Tire and Rubber Company, Incorporated, a corporation."
Except for the testimony of one witness, David Gabriel, a codefendant of appellant, the evidence was exclusively circumstantial as to appellant's connection with the crime.
Floyd Medlin, an employee of Goodyear Tire and Rubber Company at Gadsden, Alabama, thirty-four years, testified that on June 25, 1974, a truck of Roadway Express was loaded under the direction of the witness, who was traffic manager of Goodyear at Gadsden at the time. Eighty-eight bundles, of nine tires to a bundle, were placed on the truck. The truck with the loaded tires was routed to go to the Roadway Terminal to be there dispatched to Pontiac, Michigan.
According to further testimony of Mr. Medlin, he was called to Ft. Payne, Alabama, on June 29, 1974, saw three hundred and ninety-five of the same tires at the Police Department at Ft. Payne. He said that he checked "the orange dot and serial number" on each and every tire, that the tires were owned by Goodyear and that the value of each tire was approximately thirty dollars.
According to the testimony of Roy Gibson, then terminal manager of Roadway *Page 408 
Express in Gadsden, a Roadway truck brought a load of tires from Goodyear, consisting of eighty-eight bundles, with each bundle containing nine tires, to the Roadway Express Company place of business on the afternoon of June 25, 1974, where they were transferred to a trailer of another unit, which after loading was sealed. On the morning of June 26, 1974, the truck and trailer were missing from the terminal. Later that day he saw the unit about "8 miles east on Highway 278." The seal of the trailer had been broken, half of the tires had been taken therefrom, and half were still in the trailer. No key had been used to start the tractor; the ignition was out of the tractor and "the ignition wires had been wired underneath in order to start the tractor." On June 29, the witness went to Ft. Payne and picked up three hundred and ninety-five tires that had "a serial number signifying that they were General Motors tires for that week going to Pontiac, Michigan." They were Goodyear whitewall tires, G-78-14, as described in the indictment. Mr. Medlin was with him at the time.
David Gabriel testified as a witness for the State that in June 1974 he lived in Smyrna, Georgia, and operated a tire store in Atlanta, in which he put "white sidewalls on black wall tires." As a result of a phone call, he went to Rome, Georgia, in a truck driven and owned by John Leonard, and after picking up a twelve-year-old boy, they were directed by the boy to a "country place" near Ft. Payne, where defendant and Gabriel loaded approximately one hundred and forty-five tires on the truck; defendant gave the witness instructions as to how to go to Smyrna, Georgia, "through Chattanooga rather than to go through Rome." The tires loaded were "all the truck would carry"; they were Goodyear tires. After the truck was loaded, he and John proceeded toward Ft. Payne by following defendant who was driving a yellow automobile, which the witness thought was a Cadillac. In Ft. Payne, the truck was stopped by the police, but the defendant kept driving.
According to the testimony of Officer David Kean of the Ft. Payne Police Department, he was on duty about 1:00 A.M., June 29, 1974, and noticed a yellow Buick cross an intersection while the light was green for it; following it was a truck that stopped for the intervening red light; two men were in the truck; the one not driving the truck was drinking beer; when the truck crossed the intersection on the green light, the witness pursued it and stopped the truck. In the truck were "John and David." At the time the truck stopped for the red light, the driver of the yellow Buick automobile looked back in the direction of the truck. The truck had a "big high bed" and was full of tires. When the driver was questioned as to his ownership and did not produce any proof thereof, the witness called for a "back-up unit" and the two men, the truck, and the tires were taken to the office of the Ft. Payne Police Department. While the witness was going into the office with the two men, he saw the automobile that he had previously observed pass the office. Officer Kean further testified that on the same morning as it was "getting daylight," he went with Officers Moses, Bethune and Collins to the home of defendant, but just before arriving there, he and Moses left the vehicle in which they rode, went through the woods back of defendant's house and another area across the road from the front of defendant's house. He noticed a pig pen back of defendant's house. Upon looking over the area across the road from defendant's house, he found two piles of "brand new tires." He made no exact count but said it was "close to one hundred and fifty, sixty, something like that." They sent for a county truck, which came to the scene, loaded the tires thereon, took them to the "City Hall," and sent them to Goodyear. In estimating the distance between the tires and defendant's house, the witness said it was about one hundred yards. There was an unoccupied house trailer about one hundred and fifty or two hundred feet from the place where the tires were found.
According to the testimony of Detective Wayne Parker, of the Ft. Payne Police Department, on the morning of June 29, 1974, he piloted a DeKalb County truck from Ft. *Page 409 
Payne to the residence of defendant to pick up the tires found across the road from defendant's home. He said in part:
"Q Where were they taken?
"A To the Police Department here in Ft. Payne.
 "Q I'll ask you, Detective Parker, if — And let me complete my question before you answer it. If you observed any other tires or tire there at that location on Lookout Mountain while you were not on the property itself of Mr. Causey?
"A Yes sir.
"Q Sir?
"A Yes sir.
"Q Where was the item or items which you observed?
 "A Laying on the side of the drive-way going into Mr. Causey's residence approximately halfway between the road and Mr. Causey's residence. As you go in the drive-way the tire would have been laying on the left of the drive-way.
 "Q Where were you when you observed, first observed the tire?
 "A I was in the dirt road running parallel with Mr. Causey's house.
"Q Is that a public road?
"A Yes sir.
"Q All right, was it one tire or more than one tire.
"A One tire.
". . . .
 "Q Detective Parker, what kind of a tire was this that you observed in the driveway? What did you do with it?
 "A I put it in my car, and the tire was brought to Ft. Payne and put with the other tires.
 "Q Was it a different tire or the same tire as the others?
"A It was the same tire as the others.
 "Q How many tires that you have knowledge of, Detective Parker — how many tires were present on the truck which was apprehended by Officer Kean?
"A 145.
"Q 145?
"A Yes sir.
"Q And you located the one there in the drive-way?
"A Yes sir. That would be 146. Yes sir.
 "Q I'll ask you if you've ever observed an automobile at the home of Mr. Causey?
"A Yes sir.
"Q What kind of automobile, please sir?
"A A Buick.
"Q What kind of Buick if you know?
"A Riviera.
"Q What color if you know?
 "A Kind of a beige-yellow, almost — I guess something like the color of Dink's shirt there."
In continuing the direct examination of Officer Parker, counsel interrogated him as to entering defendant's driveway and going toward his house, at which time defendant made some point as to a "search warrant," and the court ruled that it was sustaining defendant's objection at that time to anything the witness did or saw or observed, "after he went up in the drive-way." After further testimony, including an extensive cross-examination of Officer Parker, and after the testimony of another witness, Mr. Parker was recalled as a witness for the State. He was first interrogated out of the presence of the jury, on what was apparently treated by the parties as a motion to suppress testimony and other evidence as to what the witness said, did or observed after entering the driveway. The witness described the house, the road in front of the house and the driveway and a "turn-around area." He said in his testimony on the hearing out of the presence of the jury:
 "A I went down to the Causey residence and went to the door, and on the way to the door here, laying here beside this well house was plastic tire strapping.
 "Q Mr. Parker, let me ask you were those visible from this area?
"A From this area, here?
"Q Yes sir.
"A Yes sir.
 "Q How large a bundle of those were there? Could you describe to the Court?
"A There were only a few. *Page 410 
". . . .
 "Q Is there any possibility that you took any pictures of the strapping or of the house area?
"A Yes.
 "Q Can I see those please? When was this photograph taken?
"A When was it taken?
"Q Yes sir.
"A It was taken that same day.
 "Q Were the lighting conditions the same as they were when you first saw them?
"A Yes sir.
 "Q I'll ask you to look at State's Exhibit 2 and tell me what that is.
 "A This is the block well house. This is a jeep top laid up against the well house, and these are the strappings tire strappings laying on the jeep top.
 "Q Does that picture truly and accurately represent the scene as it was that day?
"A Yes sir."
The testimony of Officer Parker out of the presence of the jury was extraordinarily extensive and lengthy. According to the trial court, the hearing lasted "forty-five minutes or so." At the conclusion of the hearing the court held:
 "Gentlemen, in view of the testimony that the strappings were visible from the drive-way, in an unenclosed area, is reasonable to conclude that there was no expectation of privacy, and therefore the 4th Amendment does not apply. I'm going to allow the introduction of the evidence.
"MR. BEATY: We except to the Court's ruling.
 "MR. MAUNEY: And the photo into evidence for the purposes of the jury?
"THE COURT: Yes.
 "MR. BEATY: We except to the introduction of the photo too.
"THE COURT: All right, bring the jury in."
The witness then proceeded to testify as to what he did and saw after he entered the driveway:
"Q All right, did you go to where the tire was?
"A Yes sir.
"Q What did you do after you did that?
 "A After I seen the tire I went down there and looked at the tire. It was a brand new Goodyear tire that was previously talked about that was found over here. From here I went to the doorway, knocked on the door to talk to Mr. Causey.
 "Q All right, what, if anything, did you see while in route to the doorway or when you got to the doorway?
 "MR. BEATY: We object to anything in route to the doorway or when he got to the doorway as not having shown to have a valid search warrant there at the residence at the time.
"THE COURT: Overruled.
"MR. BEATY: We except.
 "A I saw tire strappings laying here beside the well house. They were laying on a jeep top.
". . . .
 "Q Mr. Parker, if you will be seated, I'll show you State's Exhibit 2 and ask you if you can identify that.
"A Yes sir.
"Q What is it?
"A It's a jeep top.
"Q But is that a photograph?
"A Yes.
 "MR. BEATY: We object to him testifying from the photograph. It's not shown if the photograph was made, information obtained under an illegal search.
"THE COURT: Overruled.
"MR. BEATY: We except.
"Q Who took the photograph.
"A I did.
"Q When did you take the photograph?
"A On the 29th day of June 1974."
Thereafter Exhibit 2, consisting of the photograph of the jeep top and the tire strappings thereon, was admitted in evidence over defendant's objection that it "was not made under a lawful search warrant." *Page 411 
Officer Gerald Bethune, an investigator for the DeKalb County Sheriff's Department, testified that soon after he arrived at the home of appellant on the morning of June 29, 1974, he observed "a set of dual wheel tracks coming from Mr. Dink Causey's drive-way," that had "the same tread design" as the tread design of the tires of the truck, which also had dual wheels, that had been taken to the Ft. Payne Police Department the night before. He said that he and Officer Moses "followed the tracks over the dirt road until it went to a highway and came off of Lookout Mountain."
There was much evidence from several witnesses in addition to that summarized above, some of which was to some extent at variance with the summary. However, all of the evidence narrated above remained in the case until its conclusion, and we deem it sufficient for us to pass upon the major question presented on appeal, namely, whether the evidence was sufficient to present a jury question as to defendant's guilt.
The sufficiency of the evidence was questioned in the trial court by a motion to exclude the evidence and requested affirmative charges in favor of defendant.
Appellant's attack upon the sufficiency of the evidence is in two parts. In one, he argues that, irrespective of whether there is corroboration of the testimony of David Gabriel, the evidence as a whole is not sufficient to present a jury question as to the guilt of defendant. In the other part, he contends that the testimony of David Gabriel is not adequately corroborated by other evidence, and for that special reason no jury issue was presented by the evidence as a whole.
Included in part one of the attack is argument of appellant to the effect that neither the identity nor the value of the tires as alleged in the indictment is shown by the evidence. This is negated by several portions of the evidence summarized above, which leave little, if any, room for any doubt that the property described in the indictment was stolen property. The value placed on it by the witnesses, though not conclusive proof of the value, was substantial evidence thereof. There can be no doubt that the total value far exceeded the sum of twenty-five dollars, the value necessary to constitute grand larceny, according to the then effective Code of Alabama, Re-compiled 1958, Tit. 14, § 331, as well as Code Ala. 1975 § 13-3-50.
Notwithstanding the nebulous quality in many respects of the testimony of David Gabriel, it shows definitely, without any evidence to the contrary, that defendant had possession of the stolen tires within three days after they were stolen, that there was nothing about the circumstances of his possession of the tires that tended to show that his was an innocent possession thereof. Possession by an accused of recently stolen property places upon him the burden of explaining this possession, and, in the absence of a reasonable explanation, an inference or presumption of guilt may arise that will support a conviction. Hoggle v. State, 36 Ala. App. 703, 63 So.2d 289
(1953); Haynes v. State, 40 Ala. App. 106, 109 So.2d 738 (1958).
 "The possession of property recently stolen does not raise a presumption or inference, as a matter of law, of the guilt of the possessor, but the presumption arising from such possession is a matter of fact to be passed upon by the jury." Milligan v. State, 45 Ala. App. 112, 226 So.2d 172, 174 (1969)
The requisite scienter for the crime of receiving stolen property may be inferred from circumstances of the possession by the accused of the property soon after it has been stolen.Stanley v. State, 46 Ala. App. 542, 245 So.2d 827, cert. denied,286 Ala. 738, 245 So.2d 828 (1970); Character v. State,51 Ala. App. 589, 287 So.2d 916, cert. denied, 291 Ala. 775,287 So.2d 919 (1973); Rhone v. State, 53 Ala. App. 338,299 So.2d 781 (1974).
As to the question whether there was substantial evidence to corroborate the testimony of David Gabriel, we find ample corroboration in the testimony of others; that within a few hours after seizure of the *Page 412 
truck transporting some of the stolen tires, less than four days after they were stolen, one of the tires that had been stolen was found along the driveway of defendant's residence, about halfway between the public road and the building; tire strappings were found on a jeep top at the well house at defendant's residence; and about one hundred fifty or one hundred sixty of the stolen tires were about one hundred yards from defendant's home, across the public road from defendant's house. To such evidence we add as significant the testimony of one or more witnesses that on the morning of June 29, 1974, there were dual wheel tire marks in the driveway of defendant that matched the tire treads of the dual wheel truck that Gabriel testified he and appellant loaded with the tires a few hours before at a house in the country near Ft. Payne, and that such tire marks proceeded for a considerable distance down the road from defendant's house toward Ft. Payne.
To meet the required test, corroborative evidence must legitimately tend to connect the accused with the felony, but there is no requirement that it be strong evidence or that it be sufficient of itself to support a conviction. Bridges v.State, 52 Ala. App. 546, 295 So.2d 266 (1974); Magouirk v.State, 49 Ala. App. 420, 272 So.2d 625 (1973).
The vicinity could have been more vividly described, but, according to the undisputed evidence, it was not a populous one. It was on the side of Lookout Mountain. Living in appellant's home were appellant, his wife and a twelve-year-old son. The only two mentioned neighbors were the families of a Mrs. Wells and a Mrs. Stone; Mrs. Wells lived with her three daughters as a family in a house on the other side of the road from appellant's. The distance from her house to the piles of tires found across the road from appellant's house was greater than the distance between such tires and appellant's house, but there is not the slightest suggestion in the evidence that any of the tires were ever upon the property of Mrs. Wells or that there was any connection between her, or any of her family, and the tires. Mrs. Stone and her son lived on the same side of the road as appellant, but farther away from the tires than appellant. There is no suggestion in the evidence that any of the tires were ever on the property of Mrs. Stone or that she, or any of her family, had any connection with the tires. According to the only evidence on the subject, the land upon which the large number of tires were found was owned by someone in Atlanta, Georgia.
No testimony whatever was offered by defendant tending to explain the presence of the tire found along his driveway or that of the tire strappings found near his house, or to explain the presence of the large number of new tires on the unoccupied land across the road from his house.
We conclude that there was substantial testimony tending to corroborate that of David Gabriel as to appellant's connection with the alleged crime, and that the question of the strength of the evidence as a whole as to appellant's guilt was well within the province of the jury. The trial court was not in error in denying defendant's motion to exclude the evidence or in refusing defendant's requested affirmative charges in his favor.
The evidence as to the automobile tire along the driveway of appellant's residence and as to the tire strappings on the jeep top at the well house was properly admitted.
 ". . . It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence. Ker v. California, 374 U.S. 23, 42-43, 83 S.Ct. 1623, 1634, 1635, 10 L.Ed.2d 726 [743] (1963); United States v. Lee, 274 U.S. 559, 47 S.Ct. 746, 71 L.Ed. 1202
(1927); Hester v. United States, 265 U.S. 57, 68 L.Ed. 898, 44 S.Ct. 445 (1924)." Harris v. United States, 390 U.S. 234, 236, 88 S.Ct. 992, 993, 19 L.Ed.2d 1067, 1069 (1968).
There can be no doubt that when Detective Parker first saw the tire along the *Page 413 
driveway, he had "a right to be in the position" to see the tire, for he was walking along the public road at the time. At the time he saw the tire strappings, he also had the "right to be in the position" to see such objects, for he was then on the way from the place where he had observed the tire to the door of defendant's, to whom it would seem he owed the courtesy of at least reporting to him that one of the stolen tires had been found in his driveway. There was nothing illegal, nothing improper, nothing unreasonable about Detective Parker's conduct as to the tire and the tire strappings. Appellant's Fifth Amendment right was not violated.
After the attorneys had concluded their arguments to the jury and after the court had thereupon excused the jury for the noon recess, the following occurred out of the presence and hearing of the jury:
 "MR. BEATY: I have a motion for a mistrial based on the statement of the District Attorney that there was no explanation given as to what he was doing down at the hog pen if he did not live there as an improper comment. We move for a mistrial based on that comment of the District Attorney.
"THE COURT: I'll deny the motion.
"MR. BEATY: We except."
We are at a loss to determine the meaning of the statement attributed to the district attorney in defendant's motion for a mistrial. Appellant argues that it constituted a reference to defendant's failure to take the stand as a witness in the case. We find nothing in the record to justify that conclusion. We find no testimony by any witness that defendant was "down at the hog pen."
 "`In order for this Court to intelligently pass upon the question, enough of the remarks of the solicitor must be incorporated in the record to inform the court as to what was really said, and not mere[ly] disjointed sentences of the solicitor's speech.' Gray v. State, 19 Ala. App. 550, 98 So. 818, 819; Pate v. State, 32 Ala. App. 365, 26 So.2d 214." Johnson v. State, 35 Ala. App. 645, 51 So.2d 901 (1951)
There is not a sufficient basis in the record for us to determine therefrom that the district attorney argued that any inference unfavorable to defendant could be drawn from the defendant's failure to testify. The court was not in error in denying defendant's motion for a mistrial.
Our search of the record for error prejudicial to defendant reveals none. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge Leigh M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the New Judicial Article (Constitutional Amendment No. 328). His opinion is hereby adopted as that of the Court. The judgment below is hereby
AFFIRMED.
All the Judges concur.