**STATE of Maine**

v.

**Charles L. FALES.**

Supreme Judicial Court of Maine.

Argued Jan. 5, 1988.

Decided May 6, 1988.

David W. Crook (orally), Dist. Atty., Augusta, for State.

Jerome B. Goldsmith (orally), Stern, Goldsmith & Billings, Bangor, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, GLASSMAN and SCOLNIK, JJ.

NICHOLS, Justice.

Having entered a conditional plea of guilty in Superior Court (Kennebec County), pursuant to M.R.Crim.P. 11(a)(2), to the charge of unlawful trafficking in Schedule "Z" Drugs in violation of 17–A M.R.S.A. § 1106 (1983 & Supp.1987), the Defendant, Charles L. Fales, appeals his conviction on the ground that the Superior Court improperly denied his motion to suppress evidence allegedly obtained in violation of his constitutional rights.

We conclude that the Superior Court clearly erred when it denied his motion to suppress and, accordingly, we vacate its order.

In the early morning hours of March 31, 1986, the Defendant was arrested by two Winslow police officers for operating a motor vehicle while under the influence of intoxicating liquor. In accordance with police department policy, the Defendant was transported to the Winslow police station and his automobile was impounded. About 3:00 A.M. the Defendant was released on bail.

Realizing that the Defendant was now without transportation, the arresting officers offered to drive the Defendant home. The Defendant told the officers he had left a bag with a large amount of money in his car and asked if there was any way he could get it. The officers advised him they could stop and pick it up at the yard where the car was impounded. One of the officers called the yard to arrange to have the Defendant's car unlocked. For the drive to the yard, the two officers were sitting in the front seat of the police car and the Defendant in the back. The front and back seat were separated by a crash bar, metal netting and a bullet proof fiberglass slide window. The back doors were locked and could only be opened from the outside of the police vehicle. During the drive, the officers noted that the Defendant was experiencing mild mood swings, although at no time did he appear threatening or belligerent toward them.

Once at the yard, the Defendant asked one of the officers to get his bag for him. That officer testified that it was his "inten-

tion from the beginning to search the bag before [giving] it to [the Defendant]." Both officers went to remove the bag from the Defendant's vehicle. The end pocket was bulged open and visible to them was a large sum of money. The zipper on the bag was closed. The officers placed the bag on the trunk of the cruiser and proceeded to unzip and search it. Immediately the officers discovered two bags of marijuana inside the main compartment. They did not find any other money in the bag nor did they count the money in the end pocket. They then placed the bag in the trunk of their cruiser. Instead of taking the Defendant home, the officers drove him back to the Winslow police station. During the return trip, the Defendant asked the officers what they had found in the bag and observed that they may have found marijuana.

Upon arrival at the Winslow police station, the Defendant was read his *Miranda* rights. He also signed a *Miranda* rights form as well as a form consenting to a police search of his home. Furthermore, while in custody at the police station the Defendant made several incriminating statements. Searching the Defendant's home shortly thereafter, the police discovered more marijuana and other items of contraband. Based on the Defendant's statements and the evidence gathered from the search of his bag and home, the Defendant was charged with unlawful trafficking in Schedule "Z" Drugs in violation of 17–A M.R.S.A. § 1106 (1983 & Supp. 1987).

The Defendant made a pretrial motion to suppress not only the evidence from his gym bag that was secured by the State but all other evidence obtained by the State as a result of that search on the ground that the warrantless search was unlawful. The motion justice concluded that the arresting officers were justified in searching the bag before returning it to the Defendant in order to ensure that it did not contain potentially dangerous weapons, and he denied the Defendant's motion. Thereupon, the Defendant entered a conditional plea of guilty and appealed the denial of his motion to suppress to this Court.

A warrantless search is reasonable within the meaning of section 5 of article I of the Maine Constitution and the fourth amendment to the federal constitution, if there exists probable cause to search, coupled with either an absence of any reasonable expectation of privacy in the item searched, or an existence of exigent circumstances. *State v. Blais,* 416 A.2d 1253, 1256 (Me.1980). *See State v. Johnson,* 413 A.2d 931, 933 (Me.1980); *State v. Barclay,* 398 A.3d 794, 796–97 (Me.1979). Conceding that the Defendant maintained a privacy interest in his gym bag, the State urges that the Defendant's mildly moody behavior after his arrest for driving under the influence gave rise to probable cause to conduct the warrantless search of his bag. Probable cause to conduct a warrantless search, however, must be based on information that as would entitle a reasonable and cautious man to believe that the search would disclose criminal conduct or items that would aid in identifying or establishing the commission of a crime. *State v. Libby,* 453 A.2d 481, 484 (Me.1982); *State v. Smith,* 379 A.2d 722, 724–25 (Me.1977); *State v. Walker,* 341 A.2d 700, 703 (Me. 1975). The mere fact that the Defendant was somewhat moody after his arrest, absent further evidence of suspicious behavior, is insufficient to lead a reasonable person to suspect that a search of his bag would produce a weapon or items that would identify the commission of a crime. This is particularly true in light of the fact that the police officers conceded that the Defendant's behavior seemed in no way threatening or belligerent toward them.

The State failed to establish any probable cause justifying the search of the bag. Significantly, this search of the bag occurred at a time when the Defendant was not under arrest; he was being given a ride home by police who realized he was without transportation at that time. It is fundamental that such an invasion of the citizen's privacy be permitted only if there has been a valid arrest. *Draper v. United States,* 358 U.S. 307, 311, 79 S.Ct. 329, 331, 3 L.Ed.2d 327 (1959). It is equally fundamental, but somewhat more subtle, require-

ment that the arrest precede the warrant-less search. C. Whitebread, *Criminal Procedure: An Analysis of Constitutional Cases and Concepts* § 6.02 (1980). Here the State cannot justify this warrant-less search on the basis that it was a search incident to an arrest.

The State first argues that the warrant-less search was justified as a protective search. Relying on *Terry v. Ohio*, 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968) and *Michigan v. Long*, 463 U.S. 1032, 1045–1051, 103 S.Ct. 3469, 3479–3481, 77 L.Ed.2d 1201 (1983), the State contends that the Defendant's mildly moody behavior was sufficiently suspicious to warrant the limited intrusion. The constitutionally narrow scope of a *Terry* search, however, is clear. Only where a police officer observes unusual conduct which leads him to a reasonable conclusion that criminal activity may be afoot, and that the person with whom he is dealing may be armed and presently dangerous, is the police officer entitled, for the protection of himself, to conduct a carefully limited search. *Ybarra v. Illinois*, 444 U.S. 85, 92–93, 100 S.Ct. 338, 342–343, 62 L.Ed.2d 238 (1979); *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972); *Terry*, 392 U.S. at 27, 30–31, 88 S.Ct. at 1883, 1884–1885. To justify such a war-rantless intrusion, the police officer must be able to point to specific and articulable facts which, together with rational inferences from those facts, warrant the intrusion. *Michigan*, 463 U.S. at 1049–1050, 103 S.Ct. at 3480–3481; *Terry*, 392 U.S. at 27, 88 S.Ct. at 1883.[1] The police officers testified that the Defendant made no gestures or other actions indicative of an intent to commit an assault, and acted generally in a manner that was not threatening. The mere circumstance that the Defendant, a private citizen, suffered non-threatening, mild mood swings while in the presence of police officers does not sufficiently support an inference that he was armed and dangerous. *Ybarra*, 444 U.S. at 93, 100 S.Ct. at 343; *Terry*, 392 U.S. at 20–27, 88 S.Ct. at 1879–1883.

The State next argues that, whether or not there were facts that warranted an inference that the Defendant was armed and dangerous, the arresting police officers were entitled in any event to make a *Terry* search of the Defendant's bag before re-turning it to the Defendant so that they might protect themselves from the mere possibility that the bag contained weapons. Nothing in *Terry*, however, can be understood to allow such a generalized "cursory search for weapons." The "narrow scope" of the *Terry* exception does not permit a search for weapons on less than reasonable belief or suspicion directed at the person to be searched or whose belongings are to be searched. *Ybarra*, 444 U.S. at 93–94, 100 S.Ct. at 343–344; *see Adams*, 407 U.S. at 146, 92 S.Ct. at 1923. Therefore, the State's inability to articulate any specific fact that would have justified the police officers at the scene in even suspecting that the Defendant was armed and danger-ous, conclusively places the warrantless search of the Defendant's bag beyond the narrow protection of the *Terry* exception.[2]

From our conclusion that the wearrant-less search of the bag was not justified it follows that the Defendant's incriminating statements that followed the search and the evidence obtained in the subsequent search of the Defendant's home must also be suppressed on constitutional grounds. Both his statements and the evidence obtained in the search of his home were taint-ed by the unconstitutional search of his bag. *See Brown v. Illinois*, 422 U.S. 590, 597–606, 95 S.Ct. 2254, 2258–2263, 45 L.Ed.2d 416 (1975); *Wong Sun v. United*

---

1. *See generally* C. Whitebread, *Criminal Procedure: An Analysis of Constitutional Cases and Concepts* § 9.02 through 9.04 (1980).

2. No other exception to the Fourth Amendment warrant requirement arises under the facts of this case. The search of the Defendant's bag does not have the necessary elements of an inventory search. *See i.e., Colorado v. Bertine,*

479 U.S. 367, 107 S.Ct. 738, 743, 93 L.Ed.2d 739 (1987); *State v. Blais,* 416 A.2d 1253, 1258 (Me. 1980). Furthermore, the Defendant's request that the officers retrieve the bag for him did not constitute consenting to it being searched. *Contrast State v. Koucoules,* 343 A.2d 860, 867 (Me. 1974).

*States,* 371 U.S. 471, 484–94, 83 S.Ct. 407, 415–20, 9 L.Ed.2d 441 (1963).

The entry is:

Judgment vacated.

Remanded for further proceedings consistent with the opinion herein.

All concurring.