**STATE of Maine**

v.

**Rodney CLOUTIER.**

Supreme Judicial Court of Maine.

Argued Nov. 6, 1987.

Decided July 29, 1988.

Wayne S. Moss (orally), Asst. Atty. Gen., David W. Crook, Dist. Atty., J. Mitchell Flick, Asst. Dist. Atty., Augusta, for State.

Mark S. Kierstead (orally), Waterville, for defendant.

Before McKUSICK, C.J., and NICHOLS,* ROBERTS, WATHEN, SCOLNIK and CLIFFORD, JJ.

CLIFFORD, Justice.

The State of Maine has appealed [1] from an order of the Maine District Court, Waterville, granting Rodney Cloutier's motion to suppress evidence seized from his residence. The evidence in controversy was seized pursuant to a warrant that was based upon earlier observations of a police officer made through a basement window from the walkway area immediately outside the door of the defendant's residence. We vacate the judgment.

At about 8:00 p.m. on September 26, 1986, Ralph Sabins, a sergeant with the

---

* Nichols, J., sat at oral argument and participated in the initial conference but retired before this opinion was adopted.

1. See 15 M.R.S.A. § 2115–A(1) (1980 & Supp. 1987) and M.R.Crim.P. 37B.

Oakland Police Department, was on patrol in the area of Lakeview Drive in Oakland. He received a complaint that a dog was barking in the area. Sabins investigated by cruising along Lakeview Drive, stopping his car at various places along the road to listen. During one such stop he stepped out of his car and started out on foot. He noticed a basement light on in the defendant's house, which was otherwise dark, and proceeded to walk up to the side door to see if anyone was home. Sabins testified at the suppression hearing that he was drawn to the house because there had been recent reports of burglaries in the area and the light in the basement aroused his suspicion.

Sabins knocked on the side door but no one answered. As he walked down the steps from the side door he glanced into the basement window located at ground level to his immediate right. Without bending over or moving any objects in order to improve his view, he noticed several marijuana plants beneath a fluorescent light. He later obtained a search warrant on the strength of his affidavit. A search was conducted and a cable TV box was discovered in the basement, leading to Cloutier being charged with theft of services in violation of 17–A M.R.S.A. § 357 (1983).

After a hearing on Cloutier's motion to suppress, the motion judge found that Officer Sabins had no legitimate law enforcement reason justifying his presence on Cloutier's walkway when he made his observations [2] and granted Cloutier's motion to suppress the evidence seized from his basement.

The probable cause supporting the issuance of the search warrant was based upon the observations of Sabins. An observation can be a search. *See State v. Wentworth*, 480 A.2d 751, 757 (Me.1984). Whether Sabins' observations of the marijuana in Cloutier's cellar were searches

within the meaning of the fourth amendment depends upon whether Cloutier entertained a reasonable expectation of privacy with respect to those activities. *Katz v. United States*, 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967). A reasonable expectation of privacy exists if 1) a person has manifested a subjective expectation of privacy with respect to a place or object and 2) society is willing to recognize that expectation as reasonable. *Id.; State v. Bridges*, 513 A.2d 1365, 1367 (Me.1986).

Fourth amendment protection extends not only to the interior of a dwelling but also to the "curtilage," that is, to the land immediately surrounding and associated with the home. *Oliver v. United States*, 466 U.S. 170, 180, 104 S.Ct. 1735, 1742, 80 L.Ed.2d 214 (1984); *State v. Pease*, 520 A.2d 698, 699 (Me.1987). As to these protected areas, however, "[w]hat a person knowingly exposes to the public ... is not a subject of Fourth Amendment protection." *Katz*, 389 U.S. at 351, 88 S.Ct. at 511. The marijuana plant in this case was not exposed to the public at large, as it would have been had it been growing in Cloutier's front yard or on his front porch and visible from a public street or sidewalk. By cultivating the marijuana in his basement, Cloutier took some measures to conceal his marijuana activity from observation. We assume that Cloutier entertained some subjective expectation of privacy in the marijuana, yet we nonetheless conclude that because Officer Sabins was in Cloutier's walkway on legitimate police business when he made his observations, this subjective expectation of privacy was not one that society is willing to recognize as reasonable.

The portion of the curtilage at issue here, the walkway immediately outside the door of Cloutier's residence, is the normal route of access for anyone visiting the premises. As such, it is only a semi-private area, admitting of a reasonable ex-

---

**2.** The motion judge found that the facts available to Sabins did not justify his suspicion that a burglary might be occurring. He further concluded that Officer Sabins did not suspect the presence of contraband on the premises when

he approached the house and that therefore his ostensible purpose of investigating a possible burglary was not a pretext for a "fishing expedition."

pectation that various members of society may use the walkway in the course of attending to personal or business pursuits with persons residing in the home, including .police officers on police business. *State v. Rand,* 430 A.2d 808, 818 (Me.1981). The right to come upon a walkway or entranceway or porch of a residence is not absolute. Rather, the owner impliedly invites to intrude upon his or her property only those with a legitimate social or business purpose. *Id.* Moreover, the implied invitation extends only to recognized access routes reasonable under the circumstances, *id.* at 818–19; *Lorenzana v. Superior Court,* 9 Cal.3d 626, 108 Cal.Rptr. 585, 594, 511 P.2d 33, 42 (1973), and to reasonable times of day, again depending on the circumstances, *Brown v. State,* 392 So.2d 280, 284 (Fla.App.1980). As to someone present on the property under the implied invitation, the property owner has no reasonable expectation of privacy from observations made by that invitee. *Rand,* 430 A.2d at 819.[3]

■■ The historical facts in this case are uncontroverted. Based on those facts, the motion judge concluded that Officer Sabins had no legitimate reason to be on Cloutier's walkway, and therefore, by implication, determined that Cloutier had a reasonable expectation of privacy protecting him from the observations of Sabins. As a legal conclusion based on uncontroverted facts, the motion judge's ruling is independently reviewable on appeal. *State v. Hasenbank,* 425 A.2d 1330, 1332 (Me.1981).

Contrary to the motion judge's assumption, upon which the above conclusions were based, police officers may avail themselves of the implied invitation to the same extent as other persons. "An officer is permitted the same license to intrude as a reasonably respectful citizen." *State v.*

*Seagull,* 95 Wash.2d 898, 632 P.2d 44, 47 (1981); *see also Rand,* 430 A.2d at 818–19.

■■ To come within the implied invitation, a police officer must be on some police business. That does not necessarily mean that the officer has to have probable cause or even an objectively reasonable suspicion that criminal activity is afoot. The police business may be administrative as well as investigative, and it may be action based on a suspicion that turns out to be without substantial basis, provided the suspicion is held in good faith rather than as a pretext for an arbitrary search. Officer Sabins' burglary suspicion, based on recent reports of burglaries in the community and the fact that Cloutier's basement was the only illuminated room in the house, although tenuous, was held in good faith and was not pretextual. Officer Sabins was sufficiently engaged in legitimate police business so as to be an invitee. *See Rand,* 430 A.2d at 819; *see also Gilreath v. State,* 247 Ga. 814, 279 S.E.2d 650 (1981); *Causey v. State,* 374 So.2d 406 (Ala.Crim. App.1979).

■■ Having concluded that Officer Sabins was rightfully on the premises, and in view of the fact that he detected the contraband by means of his natural senses, without bending over or moving any objects to enhance his view, we necessarily hold that his observation of the marijuana was not a search for purposes of the fourth amendment. As stated in 1 W. LaFave, *Search and Seizure* § 2.3(c) at 393–94 (2d ed. 1987):

> [I]f police utilize "normal means of access to and egress from the house" for some legitimate purpose, such as to make inquiries of the occupant or to introduce an undercover agent into the activities occurring there, it is not a Fourth Amendment search for the police to see

3. We acknowledge that in some contexts, including the case of open fields, "the general rights of property protected by the common law of trespass have little or no relevance to the applicability of the Fourth Amendment." *Oliver v. United States,* 466 U.S. 170, 183–84, 104 S.Ct. 1735, 1743–44, 80 L.Ed.2d 214 (1984). However, fourth amendment cases involving the cur-

tilage, of which this is one, have long been informed by the common law. *See id.* at 180, 104 S.Ct. at 1742. "The common law may guide consideration of what areas are protected by the Fourth Amendment by defining areas whose invasion by others is wrongful." *Id.* at 183, 104 S.Ct. at 1744.

or hear or smell from that vantage point what is happening inside the dwelling. ▮▮▮ Because the marijuana was in the "plain view"[4] of Sabins and anyone else present on the walkway under the implied invitation, it was not subject to any reasonable expectation of privacy. *See Seagull,* 632 P.2d at 46–47; *see also State v. Kaaheena,* 59 Haw. 23, 575 P.2d 462, 467 (1978).

The entry is:

Order vacated. Remanded to the District Court for proceedings consistent with the opinion herein.

McKUSICK, C.J., and WATHEN, J., concurring.

SCOLNIK, Justice, with whom ROBERTS, Justice, joins, dissenting.

I respectfully dissent.

I conclude that the motion judge correctly determined that Officer Sabins had no legitimate law enforcement reason justifying his presence in Cloutier's dooryard when he made his observations, and therefore the judge's suppression order should remain undisturbed by this court.

To come within the guarantees against unreasonable searches and seizures afforded by the Fourth Amendment of the United States Constitution, an individual must entertain a reasonable expectation of privacy with respect to the activities for which Fourth Amendment protection is sought. *Katz v. United States,* 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967). The *Katz* test of reasonable expectation of privacy is met if 1) a person has manifested a subjective expectation of privacy with respect to a place or object, and 2) society is willing to recognize that expectation as reasonable. *Id.*

In the present case, the court has assumed that Cloutier entertained a subjective expectation of privacy in his basement activities. The question this case turns on, therefore, is whether this subjective expectation is one that society would recognize as reasonable. We find the answer to that question by determining whether Officer Sabins was rightfully on Cloutier's property when he made his observations.

In *State v. Rand,* 430 A.2d 808 (Me. 1981), we stated that an individual does not enjoy an absolute expectation of privacy in the driveway or walkway of his residence. 430 A.2d at 818–19. This is premised on the owner's implied invitation to the public to enter those areas for legitimate social or business purposes. *Rand* indicates that this implied invitation is also extended to policemen who enter on legitimate police business:

> [A] walkway or path to provide access to people to and from [a residence] negates an actual subjective absolute expectation of privacy on the part of the occupants, but admits of a reasonable expectation that various members of society may use the driveway [walkway or path] in their personal or business pursuits with persons residing therein, *including the police on legitimate police business.*

*Id.* 430 A.2d at 818 (emphasis added).

The motion judge determined that Officer Sabins had no legitimate law enforcement reason that would justify his presence in Cloutier's dooryard at the time he made his observations through Cloutier's basement window. This determination impliedly concludes that since Officer Sabins had no reason for being by the window, Cloutier's subjective expectation of privacy in his basement activities is one that socie-

---

**4.** According to the "plain view" doctrine, objects in plain view, sighted inadvertently after a lawful intrusion into activities or areas as to which there is a reasonable expectation of privacy, will be admissible. *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). We reject the State's contention that this is a case involving evidence in open view. Under the "open view" doctrine a police officer, located in a place where he has an *absolute* right to be, such as on a public sidewalk or street, may observe evidence by means of his natural senses without conducting a search implicating the fourth amendment. *Harris v. United States,* 390 U.S. 234, 236, 88 S.Ct. 992, 993, 19 L.Ed.2d 1067 (1968); *see also* 1 W. LaFave, *Search and Seizure* § 2.3(c) at 390 (2d ed. 1987). For a comparison of the plain view and open view doctrines, see *State v. Kaaheena,* 59 Haw. 23, 575 P.2d 462, 466–67 (1978) and *State v. Seagull,* 95 Wash.2d 898, 632 P.2d 44, 46–47 (1981).

ty would find reasonable. I find the judge's reasoning convincing:

I do not find the proposition that it is proper for any reason at any time for a police officer to be on somebody's premises, in their backyard, in their driveway, knocking on their door or looking in their windows, unless there's some reason.... I'm not imputing Sergeant Sabins' motives or his intentions or what he does as a person, but he simply isn't a person. He is the State of Maine, interfering in someone's home, and there's gotta be a reason for that to be done.... It just doesn't jibe to think that at 8:00 in the evening, with the neighbors' houses all lit up, being that close, that a burglar's gonna be in the cellar with the lights on. It just seems much more susceptible that somebody's either down there working or somebody's gone off and left the light on for a reason. Whether it's to keep the canary happy or to grow dope, that's the business of the person that lives there. And I'm satisfied that, without something more—some other reason because he is an officer of the State of Maine, that he had not the right to go on the premises. On that basis, the motion for suppression is granted.

The court, however, upon review of the same "uncontroverted" facts before the trial court, reaches the opposite legal conclusion, namely, that Officer Sabins was an implied invitee engaged in legitimate police business when he made his observations, and therefore Cloutier's expectation of privacy in his basement is not one society would deem reasonable. The court bases its conclusion on an assumption that legitimate police business can include "action based on a suspicion that turns out to be without substantial basis, provided the suspicion is held in good faith rather than as a pretext for an arbitrary search." The court further states that "that does not necessarily mean that the officer has to have probable cause or even an objectively reasonable suspicion that criminal activity is afoot." The court cites no authority for these assertions, and I am deeply disturbed by the implications of today's decision.

The court essentially indicates that as long as a police officer's conduct is not pretextual, he can enter a residential driveway or walkway, proceed to the door, and observe from this vantage point items and activities in the home so long as he has a subjective "good faith" belief that he has a reason for being there. I find this notion abhorrent to the privacy values embodied in the constitution of a free society. The vision of police officers peering into private homes in the dark of night with so little justification for achieving their vantage point conjures up the practices of repressive societies that place little value on individual liberty and personal privacy. The standard for determining whether an officer is engaged in legitimate police business must be based on something more than this court is requiring by today's decision.

I agree with the motion judge that Officer Sabins was not on legitimate police business when he entered Cloutier's property and made his observations and therefore for the purposes of the Fourth Amendment cannot claim the status of an implied invitee. He came to Cloutier's neighborhood to investigate a barking dog complaint. He had received no report of a burglary at Cloutier's residence, and had no evidence as he entered the private property that there was a burglary in progress. The "suspicion" that prompted him to walk up Cloutier's driveway and knock on his door was based on the facts that there had been previous burglaries in the community and there was a light on only in the basement.

This "suspicion," which the court concedes was "tenuous," falls short of the kind of legitimate police business that would allow law enforcement personnel to use residential walkways in the same manner as the general public. *See Rand,* 430 A.2d at 818. Clearly, the subjective expectation to be free from this kind of thinly supported intrusion by police would be recognized by society as reasonable. A homeowner at work in his basement would not expect to have his domestic tranquility disturbed by a policeman knocking at his door or peering in his basement window in the nighttime merely because the resident lives

in a community in which there had been burglaries and because he has illuminated only the area of the house in which he is working.

The Fourth Amendment prohibition against unreasonable searches and seizures does not allow a police officer to act on every "good faith" whim and enter on private residential property. Before he may do so, he must at least have an objectively reasonable justification for the incursion in order to come within the implied invitation of the property owner.

The motion judge's conclusion that was impliedly based on this higher standard was legally correct. Accordingly, because the officer had no legitimate basis for being on Cloutier's doorstep, his observations of the basement's interior constituted an unreasonable search in violation of the Fourth Amendment.

I would affirm the judgment.