STATE of Maine

v.

**Raymond PHANEUF.**

Supreme Judicial Court of Maine.

Submitted on Briefs June 19, 1991.
Decided Sept. 25, 1991.

**56**

Neale T. Adams, Dist. Atty., Carrie L. Linthicum, Asst. Dist. Atty., Caribou, for plaintiff.

Harold L. Stewart, II, Presque Isle, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, COLLINS and BRODY *, JJ.

ROBERTS, Justice.

Raymond Phaneuf appeals his conviction in the Superior Court (Aroostook County, *Pierson, J.*) of possession of a Schedule W drug in violation of 17–A M.R.S.A. § 1107 (1983). Phaneuf entered a conditional plea of guilty and, on appeal, challenges the denial of his motion to suppress cocaine found as a result of the seizure of a package mailed to Phaneuf. Because we conclude that a dog sniff search of Phaneuf's package did not violate his rights under the fourth amendment of the United States Constitution, we affirm the judgment of conviction.

### I.

On the morning of December 4, 1987, the U.S. Attorney's Office in Bangor received information via a postal inspector in Boston that Raymond Phaneuf was suspected of sending and receiving illegal drugs from the Blaine Post Office. The office promptly advised Maine State Police Detectives Marvin Hayes and Gary Crafts of this information. The detectives then contacted Tim Taylor, the postmaster in Blaine.

At about noon they met Taylor at the Blaine Post Office. Taylor showed the detectives a package addressed to Phaneuf and described Phaneuf's contacts with the post office. These contacts tended to confirm the information received from the informant. Taylor agreed to the detectives' request that he hold the package until they could bring in a specially trained dog to sniff the package for illegal drugs.

A short time later, Phaneuf arrived at the Blaine post office in a Winnebago registered in Massachusetts. He asked Taylor whether an express mail package had arrived for him. In accord with his arrangement with the detectives, Taylor told Phaneuf that the package had not yet arrived but that it might arrive by 3:00 p.m. Phaneuf said that he would check back before 3:00 and left the post office. About an hour later, Phaneuf's Winnebago again arrived at the post office. This time a person identifying himself as Tim King entered and asked if the package had arrived. When King was told that it had not arrived, he left a number for Taylor to call if the package arrived that day. Shortly thereafter, a state trooper arrived with a specially trained dog to perform a sniff test on the suspect package. The dog, Chico, indicated that Phaneuf's package contained contraband, and arrangements were made for backup in the event an arrest was necessary.

A few minutes after 4:00 p.m., Taylor called Phaneuf and King to inform them that their package had arrived. Phaneuf, along with King and another companion, retrieved the package a short time later. As Phaneuf left the post office, Hayes stopped him and asked him to return to the

---

* Brody, J. sat at oral argument and participated in the initial conference but resigned before this opinion was adopted.

post office. Phaneuf was advised of, and waived, his Miranda rights. Crafts then explained to Phaneuf that he believed the package contained illegal drugs and that a search by a trained dog tended to confirm his suspicion. Phaneuf admitted that there was cocaine in the package and agreed to open it for the detectives. He also signed a consent-to-search form. Before opening the package, Crafts again asked Phaneuf if he was aware of his rights. Phaneuf again stated that he was. When he opened the package, Crafts discovered a double packet of cocaine hidden inside a book.

## II.

■ Phaneuf argues that Chico's sniff of the package mailed to him, conducted without a warrant and in the absence of exigent circumstances, violated his fourth amendment rights. The State counters that Phaneuf's argument is contrary to the Supreme Court's opinion in *United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). We agree with the State.

In *Place*, the Court, in broad dictum, found that a canine sniff search of luggage at an airport was constitutional in that it was strictly limited to finding contraband. According to the Court "the sniff only discloses the presence or absence of narcotics, a contraband item. Thus, despite the fact that the sniff tells the authorities something about the contents of the luggage, the information obtained is limited." *Id.* at 707, 103 S.Ct. at 2644. Although the statements in *Place* were strictly dicta [1], the Court has intimated on other occasions that such searches are permissible. In *United States v. Jacobsen*, 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984), for example, the Court upheld a field test of white powder that had been found by Federal Express employees after they had damaged a package. The defendant contested the field search as a violation of the fourth amendment. The Court, however, held the search permissible, noting that "the likelihood that

official conduct of the kind disclosed by the record will actually compromise any legitimate interest in privacy seems much too remote to characterize the testing as a search subject to the fourth amendment." *Id.* at 124, 104 S.Ct. at 1662. Importantly, the Court noted that tests that could only determine the presence, or the existence, of contraband did not violate one's privacy interests in the situations presented in those cases. According to the Court:

> Congress has decided—and there is no question about its power to do so—to treat the interest in "privately" possessing cocaine as illegitimate; thus governmental conduct that can reveal whether a substance is cocaine, and no other arguably "private" fact, compromises no legitimate privacy interest.

*Id.* at 123, 104 S.Ct. at 1662. With this language the Court indicates that use of searches that can detect only the presence or absence of illegal substances place a minimal burden on privacy interests protected by the fourth amendment.

## III.

■ Phaneuf argues, nevertheless, that he had a heightened expectation of privacy in a first class package. Phaneuf attempts to support his assertion by pointing to the Supreme Court decision in *United States v. Van Leeuwen*, 397 U.S. 249, 90 S.Ct. 1029, 25 L.Ed.2d 282 (1970), and the Second Circuit decision in *United States v. Thomas*, 757 F.2d 1359 (2d Cir.1985). *Van Leeuwen* held that the fourth amendment governs any search of first class mail. *Thomas* overturned fruits of a search conducted on the basis of a warrant obtained with information garnered from a dog sniff of a door of a suspected drug dealer's apartment. In *Thomas* the court found that a heightened expectation of privacy in residences prevented officers from bringing a trained dog to the door of the defendant's apartment to sniff for drugs.

In utilizing these two cases to bolster his argument, however, Phaneuf does not dem-

---

**1.** The Court upheld the suppression order because the luggage was detained for an entire weekend.

onstrate that the Supreme Court would apply a *heightened* privacy expectation in first class mail akin to that in a person's domicile. *Van Leeuwen* held packages in the mail are protected by the fourth amendment and, unlike other classes of mail, are not subject to discretionary inspection. *Van Leeuwen,* 397 U.S. at 250–251, 90 S.Ct. at 1031–1032. We reject Phaneuf's contention that the fourth amendment creates a *heightened* expectation of privacy in the mail akin to that in one's domicile.

The entry is:

Judgment affirmed.

McKUSICK, C.J., and WATHEN and COLLINS, JJ., concur.

GLASSMAN, Justice, dissenting.

I respectfully dissent. Although we have not heretofore been required to determine the issue of whether a canine sniff test of first class mail conducted without a search warrant violates the constitutional guarantees against unreasonable searches and seizures, we have stated generally that

> [a] warrantless search is reasonable within the meaning of section 5 of article I of the Maine Constitution and the fourth amendment to the federal constitution, if there exists probable cause to search, coupled with either an absence of any reasonable expectation of privacy in the item searched, or an existence of exigent circumstances.

*State v. Fales,* 540 A.2d 1120, 1121 (Me. 1988). Neither of these latter two factors is present in the case before us.

Contrary to the court's assertions, the United States Supreme Court has never had presented to it the precise issue in the instant case. The court's reliance on *United States v. Place,* 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983), is flawed in two respects. First, the proposition in *Place* that a canine sniff of luggage seized at an airport was not a fourth amendment search constitutes a particularly suspect form of dicta. *See id.* at 706–07, 103 S.Ct. at 2644–45. The decision in *Place* to vacate the judgment of conviction rested on the Court's resolution of the only issue raised

and briefed by the parties, namely whether a ninety-minute detention of the luggage was an unwarranted *seizure* under the rules governing a brief investigative stop set forth in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and not on the constitutional status of the subsequent canine sniff search. We should be extremely wary of relying on dicta in a decision, however, broadly stated, when the Court has addressed issues not raised by the parties and has, therefore, not had the benefit of a full exposition of the relevant constitutional principles. Second, even if the court treats this dictum as binding or persuasive precedent, it must recognize that the facts of *Place* are clearly distinguishable from the present case. While first class mail is funneled through a closed system of strictly regulated handling and delivery, security measures in place at *public* air terminals clearly diminish the legitimate privacy interests of a traveler, not only as to luggage but as to all items being transported by air, including the clothing worn by the traveler. *See United States v. Place,* 462 U.S. at 707, 103 S.Ct. at 2644 ("the particular course of investigation that the agents intended to pursue here—exposure of respondent's luggage, *which was located in a public place,* to a trained canine—did not constitute a 'search.'" (Emphasis added)).

Similarly, the court can find no support from *United States v. Jacobsen,* 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984), in which the Court upheld a field test of drugs that had already been exposed to the plain view of federal drug enforcement agents by a non-governmental third party who had inadvertently revealed the contents of a sealed package sent by Federal Express. In *Jacobsen,* the government did not intrude upon first class mail; it intruded on clear plastic bags that were in plain view, and the appearance of the exposed contents gave the government agents probable cause to believe the bags contained cocaine. *But see Arkansas v. Sanders,* 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979) (no probable cause for unwarranted search when contents of luggage not in plain view). In *Jacobsen,* the Court re-

affirmed the special status of first class mail:

> Letters and other sealed packages are in the general class of effects in which the public at large has a legitimate expectation of privacy; warrantless searches of such effects are presumptively unreasonable. Even when government agents may lawfully seize such a package to prevent loss or destruction of suspected contraband, the Fourth Amendment requires that they obtain a warrant before examining the contents of such a package.

*United States v. Jacobsen*, 466 U.S. at 114, 104 S.Ct. at 1656. Hence, *Jacobsen* offers no guidance at all on any potential exceptions to the expectation of privacy in first class mail against government intrusion. While the court reads *Place* and *Jacobsen* to hold that canine sniff searches will not violate the fourth amendment *in any context,* the United States Supreme Court has never sanctioned a warrantless search of sealed first class mail.

Because the cases cited by the court do not control the case before us, I would undertake an independent analysis of the fourth amendment interests implicated here. The degree of intrusiveness in the particular police procedure, namely the canine sniff search, should not be the starting point in that analysis. By narrowing the expectation of privacy to the defendant's interest in using ·the United States mails to transport contraband, the court has turned fourth amendment analysis on its head. A police investigative procedure is a "search" for fourth amendment purposes if it intrudes upon an expectation of privacy that society recognizes as reasonable. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *State v. Cloutier*, 544 A.2d 1277, 1279 (Me.1988). The precise interest at stake in this case, the expectation of privacy that the contents of first class mail entrusted to the governmental employees will be immune from a

warrantless search, is much broader than that described by the court and one that society for over a century has recognized as reasonable. A person's effects, sealed in a letter or package, and transported by way of the mail are

> fully guarded from examination and inspection, except as to their outward form and weight, *as if they were retained by the parties forwarding them in their own domiciles....* Whilst in the mail, they can only be opened and examined under like warrant, issued upon similar oath and affirmation, particularly describing the thing to be seized, as is required when papers are subjected to search *in one's own household.* No law of Congress can place in the hands of officials connected with the postal service any authority to invade the secrecy of letters and such sealed packages in the mail.

*See Ex parte Jackson*, 96 U.S. 727, 733, 24 L.Ed. 877 (1877) (emphasis added); *see also United States v. Van Leeuwen*, 397 U.S. 249, 251–52, 90 S.Ct. 1029, 1032–33, 25 L.Ed.2d 282 (1970).[2]

Unlike airline luggage detained in transit, mail is regularly entrusted to the custody of governmental agents, who are subject to strict regulations on the inspection of certain classes of mail. 39 U.S.C.A. § 3623(d) (1980) categorically provides:

> The Postal Service shall maintain one or more classes of mail for the transmission of letters sealed against inspection.... No letter of such a class of domestic origin shall be opened except under authority of a search warrant authorized by law, or by an officer or employee of the Postal Service for the sole purpose of determining an address at which the letter can be delivered, or pursuant to the authorization of the addressee.

While this expectation of privacy is not inviolate, absent one of the narrowly tailored warrant exceptions, any intrusive pro-

---

**2.** While the Supreme Court has previously allowed that first class mail may be *seized* pending the securing of a search warrant, *see United States v. Van Leeuwen*, 397 U.S. 249, 90 S.Ct. 1029, 25 L.Ed.2d 282 (1974), that case did not

address the use of any police procedure that itself would disclose information regarding the contents of the mail prior to obtaining a warrant.

cedure designed to ascertain the contents of first class mail by means other than by an examination of its outward form and weight will implicate the fourth amendment requirement that a search warrant be obtained.

The canine sniff search is inarguably designed to ascertain the contents of a closed package using a procedure that significantly and qualitatively enhances normal human perception. While it may be true that the canine sniff search only disclosed contraband, it cannot be denied that the procedure gave the police information about the contents of the package they could not obtain by their own outward examination. The legitimate privacy interest that has traditionally attached to first class mail guards against just such encroachments. An erosion of this important sphere of privacy for the mere sake of police convenience undermines the sanctity of individual rights upon which a free and principled society must necessarily lay its foundation. The ability of the police to detain the mail based on a reasonable suspicion that it contains evidence of a crime affords them ample opportunity to obtain a warrant from a neutral and detached magistrate upon a showing of probable cause. Because the police in the instant case did not have a search warrant prior to the canine sniff search, I would vacate the judgment.