STATE OF MAINE
PENOBSCOT, SS.

SUPERIOR COURT
CRIMINAL ACTION
Docket No. CR-05-810

FILED & ENTERED
SUPERIOR COURT
JUL 2 0 2006
PENOBSCOT COUNTY

State of Maine

v.                                                  Order (Motion to Suppress)

Gary W. Poland

On April 14, 2006, hearing was held on the defendant's motion to suppress. Through his motion, the defendant seeks, first, to suppress identification evidence that would be presented through the testimony of one Clyde Smith; and, second, to suppress evidence obtained by the investigating officer as a result of contact he initiated with the defendant at the defendant's residence. For the reasons set out below, the court denies the motion.

### A. Identification evidence

During the course of the police investigation leading to the motor vehicle charges at bar, Clyde Smith identified the defendant as the person he had seen operating an SUV. The defendant argues here that the identification evidence based on Smith's observations should be excluded because, he contends, those observations resulted from an improperly suggestive procedure. To support such a challenge, the defendant bears the initial burden to prove by a preponderance of the evidence that the pretrial procedure resulting in the identification was suggestive. If the defendant satisfies this burden, the state must show by clear and convincing evidence that, despite the suggestive procedure, it resulted in a reliable identification. See State v. Baker, 423 A.2d 227, 229 (Me. 1980). Here, the state agrees that the identification procedure was suggestive, thus relieving the defendant of arguing this point. The remaining question is whether the state has proven, by clear and convincing evidence, a reliable identification irrespective of the initial defect. The court finds that the state has met its burden.

Smith was driving home from his place of employment in the area of Bangor International Airport during daylight hours in July 2005. He observed a vehicle that was

1

driven in a significantly erratic manner, at one point almost running off of the road. He called the police and provided a description of the vehicle and its registration number. Smith followed the vehicle and watched it pull into a driveway from a side street on Bangor's west side. Smith waited at the end of the driveway and was the recipient of aggressive gestures initiated by the operator of the vehicle that Smith had followed. Smith drove a short distance down the street and waited for a police officer to arrive, which happened within several minutes. The officer confirmed that the vehicle in the driveway was the same one that Smith had followed, based on the information that Smith had provided to the dispatcher earlier. Smith then saw the operator with the officer on the premises of the home where the vehicle Smith had followed remained parked.

The identification procedure used by the officer was suggestive, because the officer pointedly escorted the defendant to the end of the driveway to allow Smith to make an identification. However, the court is satisfied that it is highly probable, *see Shrader-Miller v. Miller*, 2004 ME 117, ¶ 20, 855 A.2d 1139, 1145) (clear and convincing evidence means proof to a high probability), that Smith's identification of the operator was reliable. Smith had followed the vehicle for several miles solely because he was troubled by the quality of its operation. He then saw the vehicle drive into a driveway, where Smith continued to track the movements of the operator. Smith had a direct encounter with the operator, who acted angrily toward Smith. Smith then continued to monitor activity at the residence from a nearby location while he awaited the arrival of the police. Despite some discrepancies in the descriptions of the defendant provided at the motion hearing by Smith and the officer, the virtually continuous tracking that Smith effected, when considered in the totality of the relevant circumstances, clearly and convincingly reveals the reliability of his identification of the operator.

**B. Entry of the officer onto the defendant's premises**

The defendant next argues that the responding officer, Officer Herrick, violated his fourth amendment interests when the officer entered the premises of the defendant's residence and proceeded to the back door of the house.

When Herrick first arrived at the scene, he spoke with Smith, who advised that the operator had entered the house where the vehicle Smith had followed was parked. Herrick then walked down the driveway that is associated with the residence. The

2

driveway is adjacent to the house. Herrick went up onto an open deck that is attached to the rear of the house and abuts or extends over a portion of the paved driveway. The deck leads to the rear door of the house. Herrick knocked on the door. The defendant answered. Herrick remained outside of the house while they had a brief conversation. Herrick asked the defendant to come outside, and the defendant complied. Herrick made observations about the defendant's apparently impaired condition and, as is discussed above, escorted the defendant to the end of the driveway, where Smith made his identifying observation.

The defendant argues here that Herrick invaded his privacy interests when he (Herrick) went to the back door of the house rather than proceeding to the front door, which faces the street and which is accessible by a walkway that runs off the portion of the driveway closer to the road than the deck. Although the front door of the residence also qualifies as such, access to the defendant's back door and the route leading to it carry only a limited expectation of privacy. See State v. Cloutier, 544 A.2d 1277, 1280 (Me. 1988); State v. Rand, 430 A.2d 808, 818. Based on the configuration of the premises here, the driveway and deck amount to a "recognized access route[] reasonable under the circumstances." Cloutier, 544 A.2d at 1280. Although the rear door was not visible from the street, it is customary for the rear door of a residence to be used as the primary way for residents and non-residents alike to enter and leave the house.[1] Further, Herrick went to the residence and knocked on the back door while carrying out legitimate police business. Under these circumstances, the court cannot find that Herrick's entry into that part of the curtilage violated the limited expectation of privacy associated with it.

Even, however, if Herrick invaded the defendant's privacy interest by walking to the back door instead of to the front door, the resulting evidence is not subject to exclusion.

> Evidence gained after a constitutional violation must be excluded unless the connection between the evidence and the constitutional violation is sufficiently weak. . . . To address this issue a court must determine whether, granting establishment of the primary illegality, the evidence to which instant objection is

---

[1] This factor distinguishes the case at bar from State v. Trusiani, 2004 ME 107, ¶ 19, 854 A.2d 860, 865-66, where, based on evidence about the actual use of the subject premises, a garage was not found to be a "normal route of access" into the house for people other than family members, such as a police officer.

3

> made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.

*Trusiani*, 2004 ME 107, ¶ 20, 854 A.2d at 866 (citations and internal punctuation omitted). Here, irrespective of whether Herrick was entitled to approach the back door of the defendant's residence, the constitutional analysis set out in *Cloutier* and *Rand* makes clear that Herrick was entitled to go to the front door. Thus, if Herrick erred, that mistake was simply by going to the wrong door. Herrick did not make any observations or acquire any evidence that would have been unavailable if he limited himself to the front of the house, and there is no reason to conclude that the defendant's response to Herrick would have been different if Herrick had knocked on the front door rather than the rear door. Thus, the location of the door that Herrick chose to approach was immaterial to the subsequent investigation and the information he gathered. Herrick did not exploit any illegality associated with his entry onto the premises, and the connection between any constitutional violation and resulting evidence is "sufficiently weak" (if not non-existent) to attenuate the two. Thus, even if Herrick's entry into the rear portion of the curtilage was unlawful, the evidence that Herrick subsequently obtained is not subject to exclusion on the basis of any such illegality.

The entry shall be:

For the foregoing reasons, the defendant's motion to suppress is denied.

Dated: July 19, 2006

Justice, Maine Superior Court

4

ATTORNEY FOR THE DEFENDANT

WAYNE FOOTE ESQ
P O BOX 1576
BANGOR  ME 04402-1576


ATTORNEY FOR THE STATE

GREGORY CAMPBELL
ASSISTANT DISTRICT ATTORNEY
97 HAMMOND ST
BANGOR  ME 04401